# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| DAISY M. FULFORD, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>MARK T. ESPER, )<br>    Secretary of Defense, )<br>    Defendant. ) | Case No. 1:19-cv-456 |

## MEMORANDUM OPINION

Plaintiff, Daisy Fulford, has filed these claims against her employer pursuant Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age and Discrimination in Employment Act of 1967 ("ADEA"). Specifically, plaintiff, a high school teacher working for the Department of Defense Education Activity ("DODEA") on a defense base in Japan, has alleged that she was removed from her position as cheerleading coach because of her race and her age, in violation of Title VII and the ADEA.[1] Defendant has filed a motion for summary judgment on all of plaintiff's remaining claims pursuant to Rule 56, Fed. R. Civ. P.[2] Defendant's motion has been fully briefed and argued orally, and thus is now ripe for disposition.

For the reasons that follow, summary judgment must be entered in favor of defendant on plaintiff's race- and age-based discriminatory termination claims. Defendant's stated reason for terminating plaintiff was unsatisfactory job performance as the cheerleading coach. Because of

---

[1] Although plaintiff was removed from her position as cheerleading coach in 2013, she is still a full-time high school teacher at the defense base in Japan.

[2] Defendant has also filed a motion to exclude the testimony of plaintiff's witness Shirley Miles (Dkt. 42). Defendant's motion to exclude the testimony of Shirley Miles has been rendered moot because summary judgment will be granted in favor of defendant.

plaintiff's unsatisfactory job performance, plaintiff cannot establish a *prima facie* case of discrimination, and even assuming, *arguendo*, that she could establish a *prima facie* case, plaintiff has failed to show that defendant's legitimate, non-discriminatory reason for her termination, namely her unsatisfactory job performance, was mere pretext.

## I.

The entry of summary judgment is appropriate only where there are no genuine disputes of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, it is important to identify the record facts as to which no genuine dispute exists. In this regard, Local Rule 56(B) directs a movant for summary judgment to include in its submission a separately captioned section listing in numbered-paragraph form all material facts as to which the movant contends no genuine dispute exists; the nonmovant must then respond to each paragraph citing admissible record evidence to establish a genuine dispute of material fact. In this case, both parties have substantially complied with the Local Rule. Accordingly, the facts recited herein are derived from defendant's list of material facts, incorporating plaintiff's comments where appropriate. Where plaintiff seeks to dispute an asserted fact, but either plaintiff's dispute is immaterial or plaintiff has failed to support her dispute with admissible record evidence, it has been noted.

1. Plaintiff is an African-American business and computer science teacher at Zama American High School ("Zama"), which is located on an American defense base in Japan. She has worked there for approximately 20 years.

2. Plaintiff was born in March 1945.

3. From April 2012 until his retirement in January 2015, Bruce Derr, who was born in February 1944, was the principal of Zama. Principal Derr was the superintendent of schools for the entire district of Japan prior to his initial retirement in 2009. In April 2012, Principal Derr was brought out of retirement to turn around Zama, which was on probation and not fully accredited at the time of his arrival.

4. The parents and students at Zama had been "angry and upset" with how the

school had been run before Principal Derr arrived, but he helped Zama regain full accreditation within one school year.

5. The after-school cheerleading coach position is one of many after-school coaching and supervising assignments at Zama. These positions receive stipends, which vary in amount depending on how much time commitment is required.[3] For example, the Athletic Director was paid nearly $6,000 per year, whereas the sponsor of the Eco Club was paid only $280 per year. For the 2013-2014 school year, the cheerleading coach position paid approximately $3,900 per year, indicating that a substantial time commitment was required (120-159 hours expected per school year).

6. These after-school coaching and supervising positions are typically re-filled each school year by the principal. Principal Derr often had difficulty filling these positions, including the cheerleading coach position.

7. Plaintiff acknowledged that the cheerleading coach was required to "establish[], maintain[], and publicize[] regular practice times/place," and "[t]each[] skills and [the] rules of the program."[4]

8. Principal Derr placed plaintiff in the cheerleading coach position for the 2012-2013 school year. In the Spring of 2013, plaintiff was preliminarily selected as the putative cheerleading coach for the 2013-2014 school year as well.

9. Prior to August 2013, several instances of plaintiff's underperformance as cheerleading coach had been reported to Principal Derr and other administrators at Zama. For example:

    a. Shana Seawright, the assistant principal at Zama, personally received complaints that plaintiff "left [students] alone at practice, she wouldn't help them learn anything new, [and] she wouldn't let those on base who knew how to cheer assist her with coaching [the cheerleaders] even after they offered."[5] Several cheerleaders complained directly to Seawright "that they were often left alone to practice."[6]

    b. Plaintiff acknowledged that Scott Bolin, Zama High School Athletic Director, stopped by cheerleading practice on August 19, 2013 to ascertain

---

[3] Plaintiff disputes defendant's characterization of the compensation received for coaching positions as "relatively small stipends." Dkt. 43, at ¶ 4. This dispute is immaterial, and the characterization of the stipends as small has been removed. Accordingly, there is no genuine dispute of material fact in this respect.

[4] Dkt. 43-1, Exhibit 18, Deposition of Daisy Fulford, at 22:9-24:7 (October 16, 2019); Dkt. 44, Exhibit 5, at 2.

[5] Dkt. 43-1, Exhibit 12, Declaration of Shana Seawright, at ¶ 26-27 (May 23, 2014).

[6] *Id.*

3

whether there was adult supervision because he said that there had been a few times before where there had not been any adult supervision.[7] Adele Collins, the Faculty Representative Spokesperson (FRS) at Zama in 2013, has averred that unofficial, informal cheerleading practices without adult supervision were arranged during the offseason by the captains of the team.[8]

  c. At the beginning of the 2012-2013 school year, the father of a cheerleader came to Principal Derr and "was visibly upset" with plaintiff, who "was nowhere to be seen during the cheerleading practices that took place prior to the start of the school year." According to Principal Derr, the parent stated that plaintiff "comes back late every year [from Summer vacation] and the girls are not prepared for the first game."[9]

  d. At a Fall 2012 football game, the cheerleaders were not permitted to perform their traditional half-time routine because they had not practiced sufficiently, and many of the cheerleaders became upset because the opposing high school cheerleading team was allowed to perform the traditional half-time routine.[10]

  e. In the Spring of 2013, a cheerleader's parent gave plaintiff a check to purchase a uniform, but plaintiff did not purchase the uniform. Plaintiff, months later, sent reimbursement to the parent via money order.

10. Principal Derr also received reports that plaintiff was often late for cheerleading practice. Plaintiff, in a sworn declaration, denied that she was often late for

---

[7] Dkt. 43-1, Exhibit 1, Declaration of Daisy Fulford, at ¶ 26 (May 28, 2014). Plaintiff disputes this fact in so far as it represents that plaintiff was not supervising cheerleading practices that she was supposed to supervise. Plaintiff's cited record evidence does not contradict her own declaration about what Athletic Director Scott Bolin said in this instance, but it is appropriate to include plaintiff's additional asserted fact, namely that Adele Collins has averred that the cheerleaders held unofficial practices without adult supervision during the offseason.

[8] Dkt. 49-8, Exhibit 8, Declaration of Adele Collins, at ¶¶ 30-33 (May 28, 2014).

[9] Dkt. 43-1, Exhibit 2, Declaration of Bruce Derr, at ¶ 37 (May 27, 2014). Plaintiff disputes that she came back late every year, stating that she came back late only once when the cheerleading season started earlier than anticipated. But she cites only to "PEX 6 at 4:2" to support her dispute. The cited exhibit is titled "Daisy Fulford's Cheerleading Release Document – August 23, 2013" and does not discuss anything about plaintiff returning late for the start of the cheerleading season. Accordingly, plaintiff has not effectively disputed defendant's asserted fact, and there is no genuine dispute of material fact with respect to Material Fact 9c.

[10] Dkt. 43-1, Exhibit 2, Declaration of Bruce Derr, at ¶ 37 (May 27, 2014). Plaintiff disputes this fact by asserting that she fought to prevent the other high school's cheerleading team from performing a half-time routine and that Principal Derr allowed the other high school's cheerleading team to perform. Plaintiff's assertion misses the mark and does not create a disputed issue of fact. The record evidence plaintiff cites does not dispute the asserted fact, namely that Zama's cheerleading team was not prepared to perform at the football game and that the other high school cheerleading team's performance upset the Zama team. Accordingly, plaintiff has not effectively disputed defendant's asserted fact, and there is no genuine dispute of material fact with respect to Material Fact 9d.

practice, but stated that "[i]f [she] was late it was once or twice a week, depending upon the week."[11]

11. At some point during the Summer of 2013, the cheerleaders independently sought out a volunteer coach via Facebook to help them practice.

12. Cecilia Mullis, the wife of a servicemember, volunteered to assist the girls with their routines. She had years of experience with cheerleading and with coaching.[12]

13. Prior to the start of the 2013-2014 school year, Principal Derr distributed cheerleading uniforms to the students before plaintiff returned to school.

14. The cheerleading team was required to begin practices ten days before the football season began, but plaintiff was out of the country ten days prior to the first football game in August 2013. According to Principal Derr, the cheerleaders came to his office "almost daily during the two weeks prior to the start of school [in 2013] to ask for [his] assistance or to complain about the cheerleading situation."[13]

15. Upon plaintiff's return to Japan in late August 2013, she noticed that Mullis was practicing with the team, and plaintiff began questioning students about how they had received their uniforms. One student called her mother to tell her what was happening, and her mother came to the school to intervene in the situation.

---

[11] Dkt. 43-1, Exhibit 6, Rebuttal Declaration of Daisy Fulford, at ¶ 28 (June 4, 2014). Plaintiff disputes defendant's categorization of plaintiff's propensity to be late for practice. Defendant's statement of material facts stated that plaintiff acknowledged she was late for practice once or twice a week. This fact has been modified to represent plaintiff's sworn declaration accurately, namely that plaintiff denied being late for practice, but admitted that if she was late, it was once or twice a week. In addition, plaintiff averred that the cheerleaders were not supposed to start practice until she arrived. *Id.*

In addition, plaintiff disputes defendant's statement that plaintiff acknowledged that she had difficulty helping students learn routines. Defendant cites to plaintiff's EEOC declaration for this proposition, but the EEOC declaration only states that the cheerleaders had difficulty *learning* some of the programs, not that plaintiff could not teach them. *Id.* at ¶ 26. As a result, this aspect of defendant's asserted fact has been omitted from the statement of material undisputed facts, and it is not considered in the analysis that follows.

[12] Plaintiff disputes this fact by citing to her own sworn declaration, which avers that Mullis had never coached a high school cheerleading squad. *See* Dkt. 49-2, Exhibit 2, at ¶ 50. Defendant's asserted fact, however, does not state that Mullis had coached a high school cheerleading squad before; it merely asserts that Mullis had years of experience with cheerleading and with teaching. Defendant's asserted fact is supported by Mullis's job application, in which Mullis represented that she had eight years of teaching experience and had competed as a cheerleader at the high school and collegiate level. *See* Dkt. 43-1, Exhibit 10. Accordingly, plaintiff has not effectively disputed defendant's asserted fact, and there is no genuine dispute of material fact in this respect.

[13] Dkt. 43-1, Exhibit 2, Declaration of Bruce Derr, at ¶ 37 (May 27, 2014). Plaintiff disputes that the record indicates that the cheerleaders came to Principal Derr's office on a daily basis to complain about the cheerleading situation, but plaintiff provides no citation to the record to support this dispute. Accordingly, plaintiff has not effectively disputed defendant's asserted fact, and there is no genuine dispute of material fact in this respect.

16. Principal Derr asked to meet with plaintiff, and they met a few days later on August 22, 2013. Plaintiff attended with her chosen representative, Adele Collins. Assistant Principal Shana Seawright was also present.

17. The meeting was urgent because the first football game was scheduled for August 24, 2013, and the cheerleaders needed to have a proper coach immediately.

18. Plaintiff's own sworn declaration states that at the August 22, 2013 meeting, Principal Derr first asked plaintiff how many years she had been involved with cheerleading activities, and plaintiff replied that she had been a cheerleading coach for seven non-consecutive years and that she had been the Far East Cheerleading director for three years. Principal Derr then commended plaintiff on several of her contributions to non-coaching activities, including a fundraiser, and he noted that plaintiff had received good ratings as a teacher.

19. Plaintiff's account states that Principal Derr then contrasted plaintiff's teaching ability with her coaching performance. With respect to plaintiff's coaching, Principal Derr stated that "he felt [plaintiff] was unorganized, [she] didn't attend cheer practice, and [she] was holding a check that belonged to a cheerleader." Plaintiff "immediately and strongly refuted" these claims.[14]

20. Plaintiff's account of the August 22, 2013 meeting further states that Principal Derr noted that there had been complaints from parents, and that although these complaints had been made verbally, he could obtain the complaints in writing.

21. At the end of the August 22, 2013 meeting, Principal Derr told plaintiff that he intended to remove her from the cheerleading coach position, but she would remain in her full-time teaching position.

22. After the August 22, 2013 meeting, Principal Derr obtained in writing some of the parental complaints he had mentioned during the in-person meeting. For example:

    a. Parent Jamie McKenzie sent a letter dated August 28, 2013 stating that plaintiff "often would come late to practice" and the students "just sat around, talked, did stretches for 15 minutes and had no real work out."[15]

    b. Parent Mely Sybico sent an email on August 30, 2013 stating that plaintiff "did not do anything" for the students because she was "mostly not in

---

[14] Dkt. 43-1, Exhibit 1, Declaration of Daisy Fulford, at ¶ 26 (May 28, 2014). Plaintiff disputes this fact by asserting that she never missed a cheer practice and that she returned the money to the parent in question via money order. This fact, however, merely sets forth plaintiff's own recollection of what Principal Derr said to her in the August 22, 2013 meeting. It does not establish whether the substance of Principal Derr's comments is accurate, but rather what he expressed to plaintiff in the August 22, 2013 meeting. Accordingly, plaintiff has not effectively disputed defendant's asserted fact, and there is no genuine dispute of material fact in this respect.

[15] Dkt. 43-1, Exhibit 7, Letter from Jamie McKenzie (August 28, 2013).

practice with them so all the routine was made up by the team"—*i.e.*, by the students themselves.[16]

23. After removing plaintiff from the cheerleading coach position, Principal Derr asked the teachers that had been newly hired for the 2013-2014 school year if they were interested in the position. None of the new hires expressed interest. Principal Derr did not advertise the position with any of the other faculty because he had already advertised it in the Spring of 2013 and plaintiff was the only faculty member interested at that time.[17]

24. Principal Derr spoke with Mullis, who had been practicing with the students during the Summer of 2013 on a volunteer basis and who had already begun the paperwork to become a substitute teacher, about whether she was interested in taking the cheerleading coach job.

25. Mullis submitted a formal application for the cheerleading coach position that listed her extensive cheerleading credentials.[18] Mullis's application states that she had eight years of experience coaching cheer/tumbling, that she was a cheerleader for four years at the high school level (as a member of a team that won the state championship), that she was a cheerleader at the collegiate level (as a member of a team that placed fifth at a national competition), and that she had trained as a cheerleading judge.

26. Principal Derr selected Mullis as the new cheerleading coach on August 23, 2013. After Mullis became the cheerleading coach, Principal Derr received several positive comments from parents about Mullis. That year, the cheerleading team won second place in a cheerleading competition.

27. On December 30, 2013, plaintiff filed a formal complaint of discrimination related to her removal from the cheerleading coach position. She alleged race and age discrimination and retaliation based on EEO complaints she made from 2007-2009. On May 2, 2016, the Agency EEO issued a Final Agency Decision ("FAD") in a ten-page opinion which found that plaintiff was not unlawfully discriminated against based on her race, age, or in reprisal for prior EEO activity. On March 15, 2018, the EEOC affirmed the Agency EEO's FAD in a 13-page decision. On September 25, 2018, plaintiff's request for reconsideration of the EEOC's decision was denied.

---

[16] Dkt. 43-1, Exhibit 7, Email from Mely Sybico (August 30, 2013).

[17] Plaintiff disputes this fact, asserting that Principal Derr never re-advertised the cheerleading coach position in August 2013 either formally or informally. Plaintiff, however, has not cited to any record evidence to support her dispute. Accordingly, plaintiff has not effectively disputed defendant's asserted fact, and there is no genuine issue of material fact in this respect.

[18] Although not raised by either party, it is worth noting that Mullis's application is dated August 15, 2013, a week before plaintiff's August 22, 2013 meeting with Principal Derr.

7

28. On December 27, 2018, after exhausting her administrative avenues for relief, plaintiff filed the instant suit in the Richmond Division of the Eastern District of Virginia. On April 12, 2019, the case was transferred to the Alexandria Division pursuant to 28 U.S.C. § 1406(a).

29. On May 10, 2019, plaintiff's § 1983 and Administrative Procedure Act ("APA") claims were dismissed because plaintiff withdrew her § 1983 claim and plaintiff's APA claim was preempted by Title VII and the ADEA.

30. On May 28, 2019, plaintiff filed an Amended Complaint. On July 3, 2019, plaintiff's retaliation claims and sex-discrimination claim were dismissed for lack of subject matter jurisdiction and for failure to state a claim. Accordingly, plaintiff's only remaining claims are (i) a Title VII race discrimination claim and (ii) an ADEA age discrimination claim.

## II.

Defendant has moved for summary judgment on all of plaintiff's remaining claims, namely race discrimination under Title VII and age discrimination under the ADEA. In this respect, the standard for summary judgment is too well-settled to require extensive discussion here. Simply put, summary judgment is appropriate when there is "no genuine issue as to any material fact" and based on those undisputed facts the moving party "is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To serve as a bar to summary judgment, facts must be "material," which means that the disputed fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, at the summary judgment stage, courts must "view the evidence in the light most favorable to…the non-movant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

## III.

Defendant has moved for summary judgment on plaintiff's race and age discrimination claims on the ground that plaintiff cannot establish a *prima facie* case of discrimination based on

either race or age. Because the summary judgment record establishes that plaintiff was not performing her duties as cheerleading coach at a level that met defendant's legitimate expectations, summary judgment must be entered in favor of defendant on plaintiff's race- and age-based discrimination claims.

Plaintiff offers no direct evidence of race or age discrimination in this case.[19] Her discrimination claims are therefore analyzed under the under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must establish a *prima facie* case of disparate treatment. To do so, a plaintiff must show (1) that she is a member of a protected class; (2) that she suffered adverse personnel action; (3) that she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) that the position remained open or was filled by similarly qualified applicants outside the protected class. *Id.* at 802 (applying the requirements to race discrimination claims); *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006) (applying the same requirements to age discrimination claims). In the event plaintiff establishes a *prima facie* case, defendant may rebut that case by articulating a legitimate, non-discriminatory justification for the adverse personnel action. *See Warch*, 435 F.3d at 513–14. To overcome the legitimate, nondiscriminatory justification provided by defendant, plaintiff must establish that the proffered justification is pretextual. *Id.* at 514.

Where, as here, the undisputed record evidence indicates that plaintiff was not meeting her employer's expectations at the time of her termination, a plaintiff fails to establish a *prima*

---

[19] Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x. 675, 681 (4th Cir. 2009) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc)).

*facie* case of discrimination.[20] *See Warch*, 435 F.3d at 517–18 (holding that employee who was repeatedly reprimanded for performance and instructed on how to improve was not meeting employer's legitimate performance expectations). The undisputed summary judgment record clearly establishes that plaintiff was late to practice once or twice a week and that Principal Derr and Assistant Principal Seawright received complaints about plaintiff's coaching from cheerleader's parents and from the cheerleaders themselves.[21]

Specifically, the parent of a cheerleader complained to Principal Derr in the Fall of 2012 that plaintiff did not attend the cheerleading practices prior to the start of the school year, that plaintiff comes back from Summer vacation late every year, and that the students are therefore not prepared for the first football game.[22] Assistant Principal Shana Seawright has averred that she personally received complaints that plaintiff left students alone at practice and that plaintiff did not help the students learn any new cheerleading skills.[23] In the Summer of 2013, the cheerleaders sought a volunteer coach via Facebook to help them practice,[24] which indicates the cheerleaders may not have been happy with plaintiff's coaching. In August 2013, the cheerleading team was required to begin practices ten days before the first football game on August 24, 2013, but plaintiff was out of the country at that time. During this time period, Principal Derr has averred that the cheerleaders came to his office "almost daily" to ask for his

---

[20] The other three elements of a *prima facie* case of disparate treatment are uncontested. Plaintiff's race and age make her a member of two protected classes, plaintiff's termination from the cheerleading coach position constitutes an adverse personnel action, and the cheerleading coach position was filled by a similarly qualified applicant outside the protected classes, namely Mullis who is white and under the age of 40. *See Warch*, 435 F.3d at 513.

[21] *See* Material Facts 9a, 9c, 10, 11, 14, 15, 22a, 22b.

[22] *See* Material Fact 9c.

[23] *See* Material Fact 9a.

[24] *See* Material Fact 11.

10

assistance or to complain about the cheerleading situation.[25]

In light of these complaints, which focus on plaintiff's failure to supervise practice and plaintiff's unsatisfactory coaching, Principal Derr terminated plaintiff on August 22, 2013 because of his belief that she was not meeting his reasonable expectations for the job.[26] In sum, the summary judgment record makes unmistakably clear that plaintiff was not satisfying Principal Derr's legitimate expectations for the cheerleading coach position.

Seeking to avoid this conclusion, plaintiff argues that she was performing her job as cheerleading coach satisfactorily, that if she was late to practice, it was only by a few minutes, and that plaintiff was not informed of parents' complaints about her prior to her termination.[27] With respect to performance issues, there will always be a dispute between an employee and the decisionmaker who terminated that employee. As the Fourth Circuit has made clear, a plaintiff's own belief regarding her performance does not create a genuine issue of material fact. *See, e.g., King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (stating that a plaintiff's "own claim of

---

[25] *See* Material Fact 14.

[26] *See* Material Fact 19-21.

[27] Plaintiff, for the first time in her opposition brief, also appears to raise a disparate-impact claim and argues that other members of the Zama faculty who are not African American were not terminated from their coaching positions after receiving parent complaints. But plaintiff did not identify any of these other alleged coaches in response to defendant's interrogatory asking specifically for the identity of any comparators. *See* Dkt. 43-1, Exhibit 16, Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories, at 8. Plaintiff does not identify what kinds of complaints these other coaches received, and thus it is not possible to determine whether the coaches are appropriate comparators to plaintiff. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012) (finding that plaintiff must demonstrate that any wrongdoing by an alleged comparator "was comparable to the acts [plaintiff] was alleged to have committed"). In addition, plaintiff's Amended Complaint does not plead a discrimination claim based on a disparate impact theory, and plaintiff has failed to exhaust a disparate impact claim because no such theory was alleged in her EEOC charge. *See Abdus-Shahid v. Mayor and City Council of Baltimore*, 674 Fed. App'x 267, 274-75 (4th Cir. 2017) (holding that a disparate treatment EEOC charge does not exhaust a disparate impact claim and that an EEOC charge must include factual assertions identifying the discriminatory practice of the employer and the group of people adversely effected in order to exhaust a disparate impact claim). Accordingly, any alleged disparate-impact theory cannot be asserted by plaintiff here because plaintiff's failure to exhaust any such claim administratively precludes subject matter jurisdiction. And moreover, there is no evidence in this record to evaluate such a claim.

satisfactory job performance…cannot establish a genuine issue as to whether [plaintiff] was meeting [the employer's] expectations"). Importantly, when evaluating job performance, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Warch*, 435 F.3d at 518 (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000)); *see also Hawkins*, 203 F.3d at 280 (the opinion of plaintiff's co-workers as to the quality of plaintiff's work is similarly "close to irrelevant"). Here, the undisputed summary judgment record clearly establishes that Principal Derr, as the decisionmaker, had sufficient basis to terminate plaintiff based on her job performance. Specifically, Principal Derr had received complaints about plaintiff's coaching from parents and from students,[28] Assistant Principal Seawright had received complaints about plaintiff's coaching from students, and several parents sent Principal Derr letters complaining about plaintiff's coaching.[29] Accordingly, plaintiff's attempt to discredit the evidence upon which Principal Derr based his termination decision fails. Thus, plaintiff has failed to establish a *prima facie* case of race- or age-based discriminatory

---

[28] Plaintiff appears to admit in her opposition brief that the students complained to Principal Derr but argues that those complaints were orchestrated by a disgruntled student. *See* Dkt. 49, at 12. Even assuming, *arguendo*, that the students' complaints were orchestrated by a disgruntled student, Title VII and the ADEA do not protect against a mistaken-but-honestly-held belief that an employee is not performing their job satisfactorily. *See, e.g., Gibson v. Flour Daniel Servs. Corp.*, 281 F. App'x 177, 179 (4th Cir. 2008) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.") (quoting *Damon v. Fleming Supermarkets*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999)); *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997)). Accordingly, whether the students' complaints were orchestrated or not is irrelevant as long as Principal Derr believed the complaints to be true, which is undisputed on this record.

[29] Plaintiff argues that the timing of these parents' letters makes their credibility suspect. *See* Dkt. 49, at 21. Specifically, the parents' letters are dated August 28, 2013 and August 30, 2013, and plaintiff was terminated as cheerleading coach on August 24, 2013. *See* Material Facts 21, 22a, 22b. Importantly, however, plaintiff's own sworn declaration establishes that Principal Derr told plaintiff in the August 22, 2013 meeting that he had received oral complaints from parents but that he could obtain these complaints in writing, and plaintiff requested that Principal Derr obtain the complaints in writing and provide her with copies. *See* Material Fact 20. Accordingly, the parents' letters are dated after plaintiff was fired specifically because plaintiff requested written copies of the complaints that Principal Derr mentioned during the August 22, 2013 termination meeting. In this context, there is no credibility issue with respect to the parents' letters.

termination because she was not meeting the legitimate expectations of her employer, and defendant is therefore entitled to summary judgment on both claims.

**IV.**

Even assuming, *arguendo*, that plaintiff had established a *prima facie* case of discrimination, plaintiff has failed to show that defendant's legitimate, non-discriminatory reason for her termination, namely her unsatisfactory job performance, was mere pretext. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (job performance is "widely recognized as [a] valid, non-discriminatory bas[i]s for any adverse employment decision").

To establish pretext, plaintiff must present evidence sufficient for a fact finder to conclude that defendant's explanation is not the real reason for plaintiff's termination as cheerleading coach, but rather was a pretext for discrimination against plaintiff. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Plaintiff "can prove pretext by showing that [s]he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of" defendant's given justification. *Moore v. Mukasey*, 305 Fed. App'x 111, 116 (4th Cir. 2008) (quoting *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006)). But plaintiff may not "seek to expose [defendant's] rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). Importantly, in the employment discrimination context, it is well-settled that federal courts should not sit as "a super-personnel department weighing the prudence of employment decisions." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).

In addition to the arguments discussed and rejected in Part III *supra*, plaintiff argues her

termination was pretextual because (i) lesser sanctions than termination existed, (ii) she was more qualified than Mullis, the individual hired as cheerleading coach after plaintiff was terminated, and (iii) that Principal Derr did not follow DS Regulation 5550.9 in hiring Mullis. In support of her contention in this regard, plaintiff cites *Westmoreland v. TWC Amin. LLC*, 924 F,3d 718, 726 (4th Cir. 2019) for the proposition that the availability of a lesser sanction can be evidence of pretext. *Westmoreland* is clearly distinguishable and inapposite here. There, unlike here, the plaintiff committed a single isolated transgression, and the employer's officials had advised plaintiff that the single transgression was nothing serious prior to her termination. *See id.* Here, the summary judgment record establishes that plaintiff's unsatisfactory job performance was not related to a single incident, but rather numerous instances of plaintiff being late to practice and the cheerleaders not being prepared to perform routines at football games. It would be inappropriate to second-guess defendant's employment decision here, where a number of complaints from cheerleader's parents and from the cheerleaders themselves provided the basis for termination.

Plaintiff also argues that she was more qualified than Mullis, the individual hired to be cheerleading coach after plaintiff was terminated. In this respect, to establish pretext plaintiff would have to make a "strong showing that [her] qualifications are demonstrably superior" to Mullis's qualifications. *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 261 (4th Cir. 2006) (discussed in the context of promotion decisions). Here, the summary judgment record establishes that both plaintiff and Mullis were qualified for the position of cheerleading coach – both had substantial prior experience as cheerleaders and as teachers. Nothing in the summary judgment record indicates that plaintiff was substantially more qualified for the cheerleading coach position than Mullis. Accordingly, plaintiff's argument that plaintiff's termination was

pretextual because she was more qualified than Mullis fails.

Finally, plaintiff claims that Principal Derr did not follow DS Regulation 5550.9 in hiring Mullis to the cheerleading coach position after terminating plaintiff and that Principal Derr's failure to follow DS Regulation 5550.9 provides evidence of pretext. As an initial matter, DS Regulation 5550.9 is not a regulation in the administrative law sense because DS Regulation 5550.9 was not issued after notice-and-comment rulemaking. Instead, DS Regulation 5550.9 is an internal operating procedure within DODEA that "govern[s] compensation of extra-duty assignments in the Department of Defense Dependents Schools."[30] In this respect, DS Regulation 5550.9 states that a principal should make every effort to "assign extra-duty assignments to qualified employees of the school at which the activity will occur."[31]

Here, Principal Derr essentially complied with this procedure by advertising the cheerleading coach position in the Spring of 2013. At that time, plaintiff was the only interested candidate, and she was presumptively placed in the position. After additional complaints were lodged about plaintiff's job performance during the Summer of 2013, Principal Derr removed plaintiff from the cheerleading coach position. Because no other candidates had expressed interest in the position only a few months earlier, Principal Derr only advertised the position to newly hired teachers at the school. When none of those teachers expressed interest, Principal Derr hired Mullis, who had been volunteering her time with the cheerleaders over the Summer of 2013 and who had started the process of applying to be a substitute teacher at Zama. The record clearly shows that Mullis was the only person interested in the cheerleading coach position after plaintiff was terminated. Thus, Principal Derr essentially complied with DS Regulation 5550.9

---

[30] Dkt. 43-1, Exhibit 13, DS Regulation 5550.9, at 1.

[31] *Id.* at 3.

on this record. And even assuming he did not, this would fall far short of establishing pretext in this case because the totality of the circumstances clearly indicates that defendant's legitimate, non-discriminatory reason for terminating plaintiff, her unsatisfactory job performance, was the real reason she was terminated as cheerleading coach.[32]

In sum, plaintiff has failed to show that defendant's legitimate, non-discriminatory reason for her termination, namely her unsatisfactory job performance, was mere pretext.[33] Accordingly, summary judgment must be entered in favor of defendant on plaintiff's race- and age-based discriminatory termination claims.

V.

For the reasons set forth above, defendant's motion for summary judgment will be granted.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Opinion to all counsel of record.

Alexandria, Virginia
March 19, 2020

/s/
T. S. Ellis, III
United States District Judge

---

[32] See, e.g., Vaughan v. Metruhealth Companies, Inc., 145 F.3d 197, 203 (4th Cir. 1998) (defendant's failure to follow its own manual does not, on its own, indicate that the real motive for termination was discriminatory), abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000); White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 246 (6th Cir. 2005) ("[A]n employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext."); Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent.").

[33] It is worth noting that defendant has provided an additional reason supporting that the decision to terminate plaintiff was not pretextual. Defendant's explanation for plaintiff's termination, namely her unsatisfactory job performance as evidenced by parent and cheerleader complaints, has never changed since the decision was made. Cf. E.E.O.C. v. Sears Roebuck & Co., 243 F.3d 846, 852-53 (4th Cir. 2001) (holding that an inference of pretext is allowed in cases where an employer has made substantial changes to its proffered reason for the termination over time).